UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES, : | |
| : | CRIMINAL CASE NUMBER: |
| v. : | |
| : | 3:14-cr-55 (VLB) |
| OSCAR VALENTIN, et al., : | |
| *Defendants*. : | March 25, 2016 |

## MEMORANDUM OF DECISION

Oscar Valentin and Nestor Pagan (collectively, "Defendants") move to preclude the Government from introducing evidence of an intercepted August 2012 phone call between Valentin and Chelo, the alleged nickname for Pagan's brother. ECF Nos. 133; 146. Defendants argue as follows. ECF No. 133. The call constitutes hearsay because it is an out-of-court statement and "clearly" offered to prove the truth of the matter asserted. *Id.* at 4. No exclusion from the definition of hearsay or exception to the rule against hearsay applies. *Id.* Federal Rule of Evidence 801(d)(2)(E), a rule concerning an exclusion from the definition of hearsay, is the only relevant rule, but that rule doesn't apply. *Id.* First, the call occurred before the conspiracy: the call occurred in August 2012, and Pagan and Valentin did not meet until September 2012. *Id.* at 4–5. Second, the call was not made furtherance of the conspiracy because Chelo was not a member of the conspiracy and because the call had nothing to do with the conspiracy. *Id.* at 5. Third, the rule does not apply to Chelo's statements because he was not a member of the conspiracy. *Id.* at 5–6.

1

Defendants also argue that the call is irrelevant and unduly prejudicial. *Id.* at 6–7. The call is not relevant because Valentin and Chelo were not co-conspirators, the call did not involve any discussion of the matters which form the basis of the conspiracies charged, and the call takes place before Pagan and Valentin associated with each other. *Id.* at 6. Indeed, Valentin barely acknowledged Chelo's reference to Pagan getting out of jail. *Id.* The minimal probative value—assuming any—is outweighed by undue prejudice because it is "seditious and reference[s] violence towards police officers." *Id.* at 6–7.

The Government opposes on the following grounds. ECF No. 150. With respect to Valentin, the call is not hearsay. *Id.* at 13–16. Valentin's own statements are party admissions. *Id.* at 13. Chelo's statements are not hearsay under the co-conspirator exclusion. *Id.* The call itself demonstrates the existence of a drug conspiracy in August 2012 because Chelo reaches out to Valentin for drugs. *Id.* at 13–14. Other evidence, including testimony from cooperating witnesses, corroborates the existence of a drug conspiracy in August 2012. *Id.* at 14. Both Valentin and Chelo were members of the charged conspiracy as evidenced by the call itself as well as other evidence. *Id.* at 14. The call was in furtherance of the conspiracy because Chelo offered advice to Valentin with respect to dealing with the police and discussed a drug transaction. *Id.* at 15–16. The statements were made during the conspiracy because the drug conspiracy existed in August 2012. *Id.* at 16.

For the same reasons, the Government argues that the call is not hearsay under the co-conspirator exclusion with respect to Pagan. *Id.* at 16–17. While

Pagan may not have joined the conspiracy until a later date, that fact is irrelevant under Supreme Court and Second Circuit precedent. *Id.* at 17. Count 4, the narcotics conspiracy charge, began in August 2012 when the call occurred and was charged as such by way of indictment. *Id.* at 16–17.

The Government finally argues that the call is relevant and not unduly prejudicial. *Id.* at 17–21. The call is relevant because it demonstrates the existence of the charged conspiracy and that Pagan joined it. *Id.* at 18–19. Valentin and Chelo discussed a drug transaction, and Chelo pledges Pagan's assistance during call. *Id.* Whether the reference to Pagan can be characterized as made only in "passing" does not make it irrelevant; it goes to the weight of the evidence. *Id.* at 19. The call also shows that Valentin was amenable to using others to commit acts of violence. *Id.* at 18–19. The call is not unduly prejudicial because the prejudice results from the nature of the crime charged: using threats of violence and violence to promote a drug trafficking operation. *Id.* at 20—21.

The Court largely agrees with the Government. Valentin's statements do not constitute hearsay to the extent that those statements are being offered against him. F.R.E. 801(d)(2)(A); *see United States v. Lam Lek Chong*, 544 F.2d 58, 69 (2d Cir. 1976) ("While the hearsay was admissible against [the speaker-defendant] as an admission, . . . it was not admissible against [speaker-defendant's co-defendant]" under "the co-conspirator exception to the hearsay exclusion." (internal citations omitted)). Valentin's motion does not acknowledge this possibility. ECF No. 146.

The call is also not hearsay under the co-conspirator exclusion. "To admit a statement under this coconspirator exception, 'a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy.'" *United States v. Graham*, 477 F. App'x 818, 822 (2d Cir. 2012) (quoting *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). The crime clearly charges a narcotics conspiracy involving the Green Garages, and the Government has demonstrated its intent to prove the existence of that conspiracy with the call itself as well as other evidence. The call, as well as other evidence the Government intends to introduce, also demonstrates by a preponderance of the evidence that Valentin and Chelo were members of the charged conspiracy. The fact that Chelo was not indicted for participating in the charged conspiracy is of no moment. *See United States v. De Cavalcante*, 440 F.2d 1264, 1272 (3d Cir. 1971) ("[T]he rule of evidence that hearsay statements of co-conspirators *whether or not named in the indictment* are admissible at trial." (emphasis added) (citing *United States v. Annunziato*, 293 F.2d 373, 378 (2d Cir. 1961), and *United States v. Berger*, 433 F.2d 680, 683 (2d Cir. 1970)). It is also of no moment that Pagan had not joined the conspiracy at the time of the call. *See United States v. United States Gypsum Co.*, 333 U.S. 364, 393 (1948); *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir. 1986) ("It is reasonable to expect that a new recruit can be thought to have joined with an implied adoption of what had gone on before to enhance the enterprise of which he is taking advantage." (citations and internal quotation

marks omitted)). The statements were clearly made during and furtherance of the conspiracy because the call concerns the buying of narcotics and the recruitment of Pagan. The call is hardly "idle chatter."

The Court also rules that the evidence is generally relevant: the call, as a whole, helps prove the existence of a conspiracy and Pagan's recruitment in that conspiracy. The Court, however, is less impressed with the Government's second rationale—that is, the call demonstrates Valentin's propensity towards acts of violence—because that is an improper justification for admissibility. *See* F.R.E. 404(a). The call may generally offer relevant evidence, but the portion concerning violence towards the police officer should not be deemed admissible because the charges do not concern violence to a police officer and the only relevance appears to be improper propensity evidence. Further, to the extent that it is properly relevant, the probative value of that portion of the call is substantially outweighed by its inflammatory content. Few things would prejudice a defendant more than threats of violence towards a police officer, and that prejudice is unfair if the Government fails to offer a proper justification for its admission and the underlying conduct charged concerns violence towards other drug dealers, not law enforcement. The Court, therefore, excludes the portion of the call concerning violence towards a law enforcement officer. The Court accordingly GRANTS in part and DENIES in part Defendants' motions to exclude the intercepted call.

**IT IS SO ORDERED.**

                   _____/s/_____
                   **Vanessa L. Bryant**
                   **United States District Judge**

**Dated at Hartford, Connecticut: March 25, 2016**